## ST. LOUIS & S. F. R. CO. v. HUFF.

No. 491.   Opinion Filed May 10, 1910.

(109. Pac. 232.)

**RAILROADS—Killing Stock on Track—Question for Jury.** Upon the authority of **St. L. & S. F. Ry. Co. v. Loftis, 25 Okla. 496, 106 Pac. 824,** and **Ft. Smith & W. Ry. Co. v. Benson, infra, 109 Pac. 77,** it is held, that the evidence in this case was sufficient to carry it to the jury on the question of negligence.

(Syllabus by the Court.)

*Error from Choctaw County Court; W. T. Glenn, Judge.*

Action by J. H. Huff against the St. Louis & San Francisco Railroad Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*R. A. Kleinschmidt* and *R. M. Campbell,* for plaintiff in error. *Willis & Works,* for defendant in error.

KANE, J.   This was an action, commenced in the county court of Choctaw county, to recover damages for the alleged killing of a mule belonging to the plaintiff below, defendant in error here, by the locomotive and train of the defendant below, plaintiff in error here, which killing was alleged to have occurred on the 11th day of November, 1907.   There was a verdict for the plaintiff, on which judgment was duly entered, to reverse which this proceeding in error was commenced.

Plaintiff testified that the last time he saw his mule was about sundown the evening of the 10th of November, 1907; the next morning he found him on the side of the right of way of the defendant railway, with two legs broken and his body skinned and scarred in several places; that thereupon he examined the track opposite the point where the mule was found for a distance of about 150 yards, and found that mule tracks appeared in the center of the track about 150 yards east of where the mule was found lying, and that these tracks indicated that the mule ran westward in the

middle of the track from that point to a point opposite where it was found; that he heard a train going by that morning about 4 o'clock, going westward, but heard no signals. Another witness for the plaintiff answered interrogatories as follows:

"Q. What was the condition of the mule when you saw it? A. When I saw it on the right of way, it had two legs broken. It was also knocked down in the hips. It looked that way to me. Q. Was the mule living or dead? A. Living. Q. Do you know whether the mule died that day you saw him or not? A. He died—I don't know the exact hour he died—but it was before noon. Q. Did, you, or not, examined the railroad track where the mule was hit? A. I never examined it closely. I looked at the track, and saw where the mule was struck. The mule was struck, according to my judgment, right on the track. The mule tracks were there to show for themselves. Q. How long a distance did you notice the mule tracks? A. I do not know exactly—something like a hundred yards. Q. What way did the tracks indicate the mule was gong? A. West."

There was also evidence to the effect that the railroad track was straight and about level for a distance of a mile and a half in the direction from whence the train came. This was substantially the plaintiff's case.

Counsel for plaintiff in error contended that this was not sufficient to make a *prima facie* case in favor of the plaintiff, and that, if it was sufficient, before the introduction of defendant's evidence, to establish an inference sufficiently strong that a verdict based upon it would be upheld, this inference was overcome by the evidence of the engineer, who testified positively that he was paying particular attention to the track in front of him; that he had an electric headlight engine; that he saw the mule when it was struck; that it came from the north side of the track, and that it was so close to the engine when it got upon the track that it was absolutely impossible for him to stop the engine or prevent the injury; that he gave the alarm, and put on the emergency brakes, and did everything in his power to prevent the injury, but it was impossible to do so. It is difficult to distinguish this case from the long line of cases wherein this court has followed the rule laid down by the Circuit Court of Appeals of the Eighth Circuit in stock-killing

cases arising in the Indian Territory prior to statehood. The most recent of this class of cases decided by this court are *St. Louis & S. F. R. Co. v. Loftis,* 25 Okla. 496, 106 Pac. 824, and *Ft. S. & W. Ry. Co. v. Benson, infra,* 109 Pac. 77.

In *St. L. & S. F. R. Co. v. Loftis, supra,* it was held that:

"When plaintiff established that the mules were found, shortly after they were injured, upon the company's right of way and near its track, and that the track at that place was straight, that the night was clear and the moon was shining bright, that there were no obstructions to prevent the employees of the company in charge of the train from seeing the mules, that blood and hair were found scattered along the tracks for a distance of from 100 to 300 yards, indicating that they had been dragged by the train, and that there were tracks of the mules upon the roadbed and right of way, indicating that they had been running for a distance of 200 or 300 yards before being struck, this was sufficient evidence to carry the case to the jury for it to determine whether the mules had been injured by the company, and whether such injury was the result of its negligence or of the negligence of its employees."

In *Ft. S. & W. Ry. Co. v. Benson, supra,* there was no eyewitnesses to the accident. We quote from the opinion as follows:

"In the case at bar there was a bruise upon the dead horse slightly underneath and on the side, such as would likely result from being struck by a moving engine. The embankment was not steep, but sloping, so that stock could pass backwards and forwards over it. It might be that the horse, being upon the fill in attempting to jump therefrom, fell and killed himself; but the peculiar position of the horse and his wounds strongly suggest against this probability. Had he become injured in such manner, the large bruise occurring on the side and underneath and the skinned place upon his hip could not be readily accounted for, when it was shown that the horse's neck was broken and that there had been no disturbance of the surface of the embankment other than at the very place where he lay. These were all circumstances for the jury to consider and determine what caused the horse's death; and the evidence was sufficient to carry the case to the jury upon the question of negligence."

Upon the authority of the foregoing cases, and the other cattle-killing cases by this court and the Circuit Court of Appeals of the

Eighth Circuit cited therein, it was not error to submit the case at bar to the jury.

The judgment of the court below is accordingly affirmed.

All the Justices concur.